JOHN F. McCABE, Claimant, *v.* STATE OF NEW YORK, Defendant.

(Claim No. 27610.)

Court of Claims, September 16, 1947.

Samuel Bernstein and Thomas Cartelli for claimant.

Nathaniel L. Goldstein, Attorney-General (Arthur W. Mattson and Donald C. Glenn of counsel), for defendant.

LOUNSBERRY, J. This is a claim against the State of New York for negligence, and was filed in the office of the clerk of the Court of Claims on July 13, 1943, and has not been assigned although at the beginning of the trial on May 12, 1947, the attorney for the claimant made a motion, which was granted, permitting the amendment of the claim whereby the claimant, John F. McCabe, was substituted as claimant in person instead of Helen McCabe, his guardian ad litem, because claimant some time prior to the trial had been discharged from the Rockland State Hospital.

The claimant, John F. McCabe, was admitted to the Rockland State Hospital on September 25, 1942, with a history of two prior commitments in 1934 and 1940. The illness of the claimant was at that time diagnosed as dementia praecox, catatonic type.

Following the admission of the claimant to the State hospital, he was given a series of electro-shock treatments which resulted in a marked improvement in his condition. He was, therefore, assigned to a work squad on the hospital grounds, which work conformed to the generally accepted standards for the care of hospitalized patients of this type and condition.

On December 15, 1942, the claimant, with seven or eight other patients, was assigned to a squad unloading coal from a railroad coal car under the supervision of James J. Giblin, an attendant at the hospital. The claimant had similarly assisted in unloading coal on several previous occasions. He was assigned to shovel the coal into a conveyor, which loaded the coal into a truck. On the side of the conveyor opposite the

operator, who was Giblin, was a gear box partly covered. During the operation of unloading the coal, the claimant put his hands into the gears, as he says, to remove coal therefrom, and as a result of which his right hand was seriously injured. Several of his fingers were fractured and lacerated, and it was necessary to remove portions of two fingers.

The claimant, prior to his commitment to the State hospital, was by profession a painter and it is claimed that since such injury he is unable to continue his work as a house painter because of the difficulty in manipulating a paint brush.

It is also claimed that the claimant had no knowledge of the operation of the conveyor or that the gear box contained moving gears, and was not so informed by the attendant, nor was he instructed to stay away from the moving gears of the conveyor. The undisputed testimony of the attendant is that he continuously warned all of the men working with him on this particular day to keep away from the conveyor and to do only as they were told. The attendant saw the claimant point towards the gear box at which time he again told him to keep away from the machine. The claimant then put his hand into the box and the attendant said, " Get your hand out of there ", and quickly pulled the lever controlling the operation of the conveyor. The claimant on direct examination testified as follows:

" Q. Did anyone tell you to remove coal from the box?

" A. No one told me to remove coal. I just assumed the attitude."

It was apparent from the testimony of the claimant, his demeanor and attitude on the witness stand that he is still suffering from some mental illness. His testimony was incoherent and his counsel had great difficulty in obtaining intelligent answers to his questions although permitted by the court, over the objection of the State, to ask suggestive and leading questions.

The only question involved in this claim is whether the State of New York, its agents and employees, were negligent in the supervision of the operation of the coal conveyor, and whether or not the instructions of the hospital attendant were sufficient warning to the men under his supervision.

" The State is duty bound to furnish inmates of its hospitals for mental defectives with every reasonable precaution to protect them from injury either self-inflicted or otherwise." (*Dowly* v. *State of New York*, 190 Misc. 16, 20; *Shattuck* v. *State of New York*, 166 Misc. 271, affd. 254 App. Div. 926; *Martindale* v. *State of New York*, 244 App. Div. 877, affd. 269 N. Y. 554.)

" While the degree of care owing to its inmates may be more exacting because they are wards of the State and the State is the guardian of their well-being and safety, the State, nevertheless, is not an insurer of the safety of the inmates of its institutions." (*Betts* v. *State of New York*, 54 N. Y. S. 2d 475, 477; *Root* v. *State of New York*, 180 Misc. 205.)

It was incumbent to show affirmatively that the injury sustained by him was caused by reason of the State's breach of duty toward the incompetent herein. Negligence must be proved and cannot be presumed. Neither is the " * * * happening of an accident presumptive evidence of negligence." (*Betts* v. *State of New York, supra,* p. 477.)

Having carefully considered all of the testimony presented, we are of the opinion that the claimant has not established by a fair preponderance of the evidence that the State, its officers and employees, failed to furnish the claimant every reasonable precaution, instruction and supervision for his protection.

The claim, therefore, must be dismissed.

Let judgment be entered accordingly.